UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL HARRISON PAYNE,

    Plaintiff,

v.                                                         Case No:  6:17-cv-67-Orl-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Michael Harrison Payne, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff protectively filed an application for SSI on November 16, 2012, alleging a disability onset date of July 1, 2008. (Tr. 13, 69, 168-76). Plaintiff's application was denied initially on March 12, 2013, and upon reconsideration on May 22, 2013. (Tr. 98-103, 97). Plaintiff requested a hearing and, on May 6, 2015, an administrative hearing was held before Administrative Law Judge Roger L. Reynolds ("the ALJ"). (Tr. 31-63). On June 5, 2015, the ALJ entered a decision finding that Plaintiff was not under a disability since November 16, 2012, the date his application was filed. (Tr. 13-30). Plaintiff filed a request for review which the Appeals Council denied on November 15, 2016. (Tr. 1-7). Plaintiff initiated this action by filing a Complaint (Doc. 1) on January 17, 2017.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 16, 2012, the application date. (Tr. 15). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative joint disease of the bilateral shoulders and knees; massive obesity; chronic obstructive pulmonary disease with continued nicotine and marijuana abuse; non-ischemic cardiomyopathy; congestive heart failure with intermittent edema of the lower extremities; endocarditis status-post mitral valve

replacement; hypertension; history of acute renal failure; major depressive disorder and history of cocaine and marijuana abuse, allegedly in remission. (Tr. 15). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 416.967(a) except he cannot climb ladders, ropes, and scaffolds, kneel or crawl. He can only occasionally climb ramps and stairs, stoop, and crouch. He cannot perform aerobic activities such as running or jumping. He cannot work with his hands over his head. He cannot operate foot pedal controls. He must avoid concentrated exposure to dust, gases, smoke, fumes, temperature extremes, excessive humidity, vibration, or industrial hazards. He requires entry-level work with simple, repetitive, 1-2-3 step procedures. He can have no frequent changes in work routines. He should work in object-oriented, non-public environment with only occasional and casual contact with coworkers, supervisors, and the general public. He cannot work with fast-paced assembly lines or rigid production quotas.

(Tr. 17). At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a mechanic, maintenance worker, and cashier. (Tr. 24). The ALJ concluded that Plaintiff had not been under a disability since November 16, 2012, the date his application was filed. (Tr. 25).

**II.     Analysis**

Plaintiff raises a single issue on appeal: whether the ALJ erred by failing to properly evaluate and weigh the opinion of treating cardiologist Enrique D. Polanco, M.D. Plaintiff argues that the ALJ failed to provide good cause for according only "little weight" to Dr. Polanco's opinion. (Doc. 18 p. 15-22). Plaintiff contends that the ALJ mischaracterized Plaintiff's treatment history as generally conservative and routine, despite the record showing Plaintiff was hospitalized 5 times. (Doc. 18 p. 17). Further, Plaintiff argues that the ALJ erred by giving more weight to the

opinion of a non-examining ophthalmologist James Patty, M.D., who did not examine any records dated after May 2013, than to Plaintiff's treating cardiologist Dr. Polanco. (Doc. 18 p. 18).

Defendant argues that the ALJ properly considered the medical source opinions, together with other evidence, in assessing Plaintiff's RFC. (Doc. 18 p. 23). Defendant argues that the ALJ provided good reasons, support by substantial evidence, for giving little weight to Dr. Polanco's January 2015 opinion. (Doc. 18 p. 23). Defendant argues that the ALJ properly weighed the opinion of Dr. Patty, giving the opinion some weight, but finding that Plaintiff was more limited than found by Dr. Patty. (Doc. 18 p. 26).

The record shows that Dr. Polanco completed a Cardiac Medical Source Statement on January 15, 2015. (Tr. 632-36). He stated the following limitations applied since April 2011. (Tr. 636). Dr. Polanco has been treating Plaintiff every 3 to 4 months since 2009. (Tr. 632). Dr. Polanco identified Creatinine levels of 2.02, Pro BNP of 669.9 pg/mla hospitalization last year for Chronic Heart Failure and Pro BNP of 1975 pg/ml as clinical findings supporting medical impairments. (Tr. 632). Dr. Polanco identified symptoms of shortness of breath and edema. Dr. Polanco noted Plaintiff had not recently had any angina pain; however, he still had shortness of breath with minimal exertion r/t (related to) the CHF (congestive heart failure). Dr. Polanco opined Plaintiff had a "*marked limitation of physical activity*, as demonstrated by fatigue, palpitation, dyspnea, or angina discomfort on ordinary physical activity, even though [Plaintiff was] comfortable at rest." (Tr. 632). Dr. Polanco opined Plaintiff was incapable of even "low stress" jobs since "stress weakens heart muscle further, causing exacerbations of the CHF (congestive heart failure)." (Tr. 633). Dr. Polanco opined Plaintiff's cardiac symptoms were severe enough to constantly interfere with attention and concentration needed to perform even simple work tasks. (Tr. 633). Dr. Polanco opined Plaintiff's impairments are reasonably consistent with the symptoms and functional

limitations set forth in the form. (Tr. 633). Dr. Polanco opined that the large amount of diuretics cause Plaintiff to urinate very frequently throughout the day. Also, the blood pressure medications cause fatigue and lethargy. (Tr. 634). Dr. Polanco opined Plaintiff could walk less than one city block without rest or severe pain. Dr. Polanco opined Plaintiff can sit for a total of about 4 hours in an 8-hour work day and stand/walk for a total of less than 2 hours in an 8 hour work day. Dr. Polanco opined Plaintiff would need to shift positions at will from sitting, standing and walking. Dr. Polanco opined Plaintiff would need unscheduled breaks more than 6 times per shift for 20 to 30 minutes to lie down or sit quietly. Dr. Polanco opined Plaintiff would need to elevate his legs 90 degrees all of the time when sitting. (Tr. 634). Dr. Polanco opined that Plaintiff should never lift 20 pounds, rarely lift 10 pounds, and occasionally could lift less than 10 pounds. (Tr. 635). Dr. Polanco opined Plaintiff should never twist, stoop, crouch, climb ladders, or climb stairs. Dr. Polanco opined Plaintiff should avoid all exposure to extreme cold and heat, high humidity, cigarette smoke, perfumes, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and chemicals. (Tr. 635). Dr. Polanco opined Plaintiff would likely have good days and bad days and would likely be absent from work more than four days per month. (Tr. 636). Dr. Polanco opined obesity further aggravates Plaintiff's cardiac condition; however, even with weight loss, Dr. Polanco opined Plaintiff can still have exacerbations of his CHF. (Tr. 636).

In his decision, the ALJ addressed Dr. Polanco's opinion as follows:

> As for opinion evidence, the claimant's treating physician opined that he is incapable of low stress jobs, has constant cardiac symptoms severe enough to interfere with attention and concentration, could walk less than one block without rest, could sit for four hours in an eight-hour day, could stand/walk for less than two hours in an eight-hour day, needs to shift positions at will, needs more than six unscheduled breaks per shift for 20-30 minutes each to lie down or sit quietly, needs to elevate his legs 90 degrees 100% of the time when sitting, an lift and carry less than 10 lbs. occasionally and 10 lbs. rarely, can never twist, stoop, crouch, and climb, must avoid all exposure to temperature extremes, high humidity, smoke

- 7 -

>perfumes, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and chemicals, and would be absent from work more than four days per month (Exhibit 11F). The undersigned gives little weigh to this opinion, to the extent that it is inconsistent with the residual functional capacity assessed herein, as it is inconsistent with the medical evidence of record, which shows only mildly to moderately impaired diagnostic and clinical findings, generally conservative, routine treatment, and reported activities.

(Tr. 23).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a

treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In this case, the Court finds that the ALJ has failed to provide good cause for giving only little weight to the opinion of Dr. Polanco. The ALJ explained he assigned little weight to the opinions because they were inconsistent with the medical evidence of record, showing only mild to moderately impaired diagnostic and clinical findings and generally conservative, routine treatment, and inconsistent with Plaintiff's reported activities. (Tr. 23). The evidence shows Dr. Polanco treated Plaintiff during the entire relevant period here and his treatment notes suggest a generally conservative course of treatment, including continuing his medications and having certain monitoring tests performed. (Tr. 327-29, 333-35, 347, 352, 357, 362, 367, 382-83, 386-87, 373-75, 662-65). Even when Plaintiff reported an increase in edema of the lower extremities, Dr. Polanco continued with conservative treatment. (Tr. 348). In his decision, the ALJ addressed Plaintiff's hospital visits and noted that they showed only short exacerbations of Plaintiff's condition and on subsequent examinations, Dr. Polanco continued the conservative course of treatment. (Tr. 327-29, 333-35, 347, 352, 357, 362, 367, 382-83, 386-87, 373-75, 662-65).

Further, as the ALJ found, the objective tests generally undermine Dr. Polanco's opinion. For example, Plaintiff had an echocardiogram in March 2012, which had either normal or mild findings. (Tr. 259, 262). An April 2013 echocardiogram also showed mild results. (Tr. 377). Plaintiff went to the hospital in January 2014 with complaints related to his heart condition, but the chest x-rays showed no acute pulmonary disease with suspicious findings of mild congestive heart failure and negative cardiac enzymes. (Tr. 302). Plaintiff had another echocardiogram in January 2014 with generally normal or only mild findings. (Tr. 342-43). Lab results in February 2014 were stable. (Tr. 332).

The record shows that on visits with doctors or nurse practitioners other than Dr. Polanco, Plaintiff generally reported no problems with his medications and no issues with chest pains or shortness of breath. (Tr. 561). The treatment notes show improvement or stability in Plaintiff's condition. (Tr. 484-96, 501-06, 508-11, 656, 676-77, 685).

In addition, Plaintiff's activities, as discussed by the ALJ earlier in his decision, also undermine Dr. Polanco's opinions. (Tr. 22-23). As the ALJ noted, despite physical complaints, Plaintiff is able to care for his personal needs, cook, do laundry, clean, go to bars to watch his father sing karaoke occasionally, and shop. (Tr. 22, 44-46, 52, 54, 206, 212, 296). The ALJ also noted Plaintiff's reports that he could play video games, use the computer, read, and manage his money. (Tr. 23, 46, 212). Despite Plaintiff's complaints of shortness of breath, Plaintiff continued to smoke a half of a pack of cigarettes a day along with smoking marijuana occasionally. (Tr. 21, 39, 42).

The Court rejects Plaintiff's argument that the ALJ improperly accorded more weight to non-examining ophthalmologist Dr. Patty's opinion than to Dr. Polanco's opinion. State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.927(e)(2)(i). The record shows that Dr. Patty reviewed the evidence available through May 2013 and opined that Plaintiff could occasionally lift or carry 10 pounds and frequently lift less than 10 pounds; stand or walk two hours; sit about six hours; and no other postural limitations. (Tr. 90-92). The ALJ gave some weight to Dr. Patty's opinion, but based on his review of the entire record, including subsequent evidence, the ALJ found Plaintiff more limited than as found by Dr. Patty. (Tr. 23). The Court did not discount Dr. Polanco's opinion based solely on Dr. Patty's opinion, but considered both in the context of the entire record and

accorded the weight he deemed appropriate to each.  The Court finds no error in the ALJ's findings and, for this reason, will not disturb the ALJ's findings on appeal.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2018.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties